Manson **HARRIS** and **L. L. Lookabaugh, Jr.,**
Appellants,

v.

**ASHLAND OIL & REFINING COMPANY,**
Appellee.

No. 5270.

Court of Civil Appeals of Texas.

El Paso.

May 29, 1958.

William B. Henley, Jr., Dallas, for appellants.

Stubbeman, McRae, Sealy & Laughlin, F. H. Pannill, Midland, for appellee.

HAMILTON, Chief Justice.

This is a plea of privilege case. Ashland Oil and Refining Company instituted suit in the district court of Midland County, Texas, alleging that appellants were indebted to Ashland for one-fourth of the cost of development and operation of an oil well drilled in Upton County, Texas, in the amount of $3,670.29. Appellants Harris and Lookabaugh timely filed their plea of privilege, setting out their residence as being Dallas County, Texas, which fact is not disputed. Ashland thereupon filed its controverting affidavit alleging that an exception to the rule of exclusive venue in the county of the residence of appellant Harris existed by reason of Subdivision 5 of Art. 1995, Vernon's Ann.Civ.St., in that appellant Harris executed a contract in writing to pay his pro rata part of the cost of drilling and operating wells drilled on the land involved in this suit, and that such obligation required appellant Harris to make payment in the city of Midland, Midland County, Texas. Ashland's controverting plea further sought to sustain venue as to appellant Lookabaugh for the reason that Lookabaugh was a successor in interest to appellant Harris, and thereby bound by the terms of the written contract, and further, that appellant Lookabaugh was a necessary party so as to come within the provisions of Subdivision 29a of art. 1995, V.A.C.S.

The evidence before the court upon the hearing of the pleas of privilege was stipulated by the parties, and the court overruled such pleas, from which ruling appellants have appealed.

Both of the appellants complain of the trial court's ruling for the reason that the evidence was insufficient to establish venue in Midland County, Texas under Subdivision 5 of art. 1995 V.A.C.S. Appellant Lookabaugh, Jr. complains further for the reason that there is no evidence showing that Lookabaugh was a party to any contract in writing so as to come within the meaning of said Subdivision 5, and that there is no evidence that he was a necessary party within the meaning of Subdivision 29a of art. 1995, V.A.C.S.

Appellee Ashland Oil and Refining Company seeks to hold venue in Midland County under Subdivision 5, art. 1995, V.A.C.S., as follows:

"If a person has contracted in writing to perform an obligation in a particular county, expressly naming such county, or a definite place therein, by such writing, suit upon or by reason of such obligation may be brought against him, either in such county or where the defendant has his domicile."

Appellee, in its statement of the case in its brief, sets out various parts of the contract and agreements upon which it

seeks to hold venue in Midland County. We therefore adopt so much of appellee's statement of the case as to show the parts of the written contract relied upon:

"On April 20, 1954, Ashland Oil & Refining Company was the owner of certain rights in an oil and gas lease covering certain tracts of land in Hockley County, Texas, and on that date through its authorized representatives the company addressed a letter to Mr. Manson Harris, an attorney in Corrigan Tower Building in Dallas, Texas, by the terms of which Ashland agreed to transfer and assign an undivided one-fourth ($\frac{1}{4}$) interest in the leasehold estates and Harris agreed to pay his one-fourth ($\frac{1}{4}$) part of the drilling, equipping and operating of a test well to be drilled thereon as more fully set out in such letter. It is admitted that at this time Ashland Oil and Refining Company had an office and place of business in Midland, Midland County, Texas, and that this letter was written on stationery which had printed or typed at the top or letterhead the words, 'Ashland Oil & Refining Company, 219 South Big Spring Street, Midland, Texas.'

"Paragraph 6 of this letter agreement provided that there was attached to it and to be considered as a part of it a certain operating agreement between Manson Harris and Ashland. The letter agreement was accepted and approved by Harris on April 28, 1954. At the time he signed and accepted it, there was attached an operating agreement which is in the Statement of Facts in this case, paragraph 6 of which provided in part as follows:

" 'Operator shall furnish to Non-Operator an itemized statement of all expenditures, receipts, charges and credits covering each month's bills hereunder, and such statement covering the preceding month's bill shall be mailed to Non-Operator on or before thirty (30) days thereafter, and within fifteen (15) days after receipt by Non-Operator, Non-Operator shall pay the Operator, subject to further audit and adjustment, if necessary, its proportionate share of the sum or sums so expended by the Operator for the development and operation of the premises for oil, gas and casinghead gas; provided, however, that, if no objection is made by the Non-Operator within six (6) months, the statement furnished by the Operator shall be final and conclusive as to the charges. All accounts shall draw interest at the rate of six (6) per centum per annum after sixty (60) days from the last day of the month in which charge is made. Non-Operator shall have access during regular business hours and at reasonable intervals to Operator's books and all records relating to the operation and may make audits semi-annually of said accounts. The Operator shall not be liable or held for any expense involved in such examination or audit.'

"The operating agreement further contains a paragraph numbered 21 which is as follows:

" '21. Notices: All notices that are required to be given hereunder, except as otherwise specifically provided herein, shall be given in writing by United States Mail or Western Union telegram, postage or charges prepaid; and addressed to the party to whom such notice is given as follows: Ashland Oil and Refining Company 219 South Big Spring Midland, Texas; Manson Harris Corrigan Tower Building Dallas, Texas.

" 'The originating notice to be given under any provision hereof shall be deemed given only when received by the party to whom such notice is directed and the time for such party to give any response thereto shall run from the date the originating notice is received.

" 'The second or subsequent notice shall be deemed given when deposited in the United States Post Office or with Western Union Telegraph Company, with postage or charges prepaid.'

"The operating agreement further contains a paragraph numbered 22, which reads as follows:

" '22. Advances. Operator, at its election, may require each of the other parties hereto to advance his, or its or their proportionate part of the cost of developing and operating the joint property as provided in this paragraph. On or before the last day of each calendar month, Operator may submit an itemized estimate of such cost for the succeeding calendar month to each of the other parties hereto with a request for payment of such other party's part thereof. Within ten (10) days after receipt of such estimate, each of the other parties hereto shall pay to Operator the amount of such party's share of such estimate. Adjustments between estimates and actual costs shall be made by Operator at the close of each calendar month and the accounts of the parties adjusted accordingly.'

"In Paragraph No. 23 it is provided that in the event there is any conflict between the terms of the operating agreement and the accounting procedure attached thereto as an exhibit, the accounting procedure shall prevail. Suffice it to say that there is no conflict between the above provisions and any provision of this accounting procedure, the only provision for payment in such Exhibit 'B' being in Paragraph No. 3, which is as follows:

" 'Each party shall pay its proportion of all such bills within fifteen (15) days after receipt thereof. If payment is not made within such time, the unpaid balance shall bear interest at the rate of six per cent (6%) per annum until paid.' "

We find nowhere in said excerpts from the written agreements any provision whereby appellant Harris is to pay his one-fourth of the operating expenses to appellee, Ashland Oil & Refining Company, at any particular place. Certainly the fact that the letterhead had Ashland's address in Midland, Texas, is no evidence of an agreement to pay in Midland, Texas; neither does the agreement that all notices required under the operating agreement shall be mailed to Ashland Oil & Refining Company at Midland, Texas, constitute an agreement by appellant Manson Harris to pay in Midland, Texas. While we do not construe any part of said agreements to imply that payment is to be made in Midland County, Texas, though by some strained construction such fact might be implied, we understand the law to be that venue under this section cannot be fixed by implication. Saigh v. Monteith, 147 Tex. 341, 215 S.W.2d 610; Price v. Doughty, Tex.Civ.App., 145 S.W.2d 213; Hamilton v. Booher, Tex.Civ.App., 124 S.W.2d 184. There being no provision whereby appellant Harris agreed to pay his obligation under the contract in Midland County, Texas, the plea of privilege of Harris should have been sustained.

After appellant Lookabaugh filed his plea of privilege and appellee filed his controverting affidavit, the burden was upon appellee to make proof of such facts as would hold venue in Midland County, Texas. The stipulation in the Statement of Facts is silent as to any connection appellant Lookabaugh may have in the subject matter of this litigation, and fails to disclose whether he is a party signature or otherwise to any contract in writing whereby he agreed to perform any obligation in Midland County, Texas; neither was there any evidence to support appellee's controverting affidavit that appellant Lookabaugh was a necessary party to this action; therefore, Lookabaugh's plea of privilege should have been sustained.

In accordance with this opinion, the judgment of the trial court is reversed, and cause remanded, with instructions to the trial court that same be transferred to the county of residence of appellants, which is Dallas County, Texas.